*501 OPINION OF THE COURT
Abdus-Salaam, J.
This appeal requires us to determine what proof a plaintiff medical provider must advance to make a prima facie showing of entitlement to summary judgment in a no-fault insurance action. We hold that a plaintiff demonstrates prima facie entitlement to summary judgment by submitting evidence that payment of no-fault benefits are overdue, and proof of its claim, using the statutory billing form, was mailed to and received by the defendant insurer. Proof evincing the mailing must be presented in admissible form, including, where it is applicable, meeting the business records exception to the hearsay rule. Applying this rule to the facts of this case, plaintiff demonstrated entitlement to summary judgment. Therefore, the order of the Appellate Division should be affirmed, insofar as appealed from, and the certified question answered in the affirmative.
L
Following an automobile accident in June 2004, Alem Cardenas received treatment for his injuries at the office of plaintiff Viviane Etienne Medical Care, P.C. Cardenas’s automobile liability insurance policy with defendant Country-Wide Insurance Company contained a New York State no-fault endorsement. Cardenas assigned his right to receive no-fault benefits to plaintiff. To receive reimbursement for the services it rendered to Cardenas, plaintiff submitted to defendant eight verification of treatment forms[1] demonstrating the services rendered or equipment provided, and the corresponding cost. Each form was signature stamped with “V Etienne MD.” Within 15 days from receipt of the verification of treatment form, an insurer may seek further verification (see 11 NYCRR 65-3.5 [b]) and within 30 days after receiving the verification of treatment form, the insurer must pay or deny the claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). Defendant denied payment on one claim in the amount of $139 dated November 17, 2004. Defendant did not respond to any of the other claims.
Plaintiff commenced this action seeking to recover no-fault insurance benefits, asserting that it timely submitted bills and *502 claims for payment to defendant in the amount of $6,130.70,[2] but defendant had yet to make any payments, deny the requests, or ask for verification of the claims. Plaintiff also requested interest and attorney’s fees under the Insurance Law. Defendant answered and asserted as an affirmative defense that payment for plaintiff’s claims was not overdue because plaintiff failed to submit “proper proof of the fact and amount of loss” as required by the Insurance Law.
Plaintiff moved for summary judgment on its claims, arguing that it had met its prima facie burden of showing the fact and amount of loss sustained, and that the payment of the benefits was overdue. As support, plaintiff submitted the aforementioned eight verification of treatment forms as proof of claim, along with seven mailing ledgers stamped by the United States Postal Service indicating the date the forms were mailed, and the denial of claim form. Additionally, plaintiff submitted the affidavit of Roman Matatov, President of SUM Billing Corp. (SUM Billing), a third-party billing company hired by plaintiff.
In the affidavit, Matatov explained the company’s billing procedures. The medical providers must submit an assignment of benefits form signed by the injured party along with the injured party’s identification prior to SUM Billing sending out the verification of treatment forms to the insurance companies for reimbursement. Matatov personally obtains the insurance cards and police reports pertaining to the accident. He incorporates all the above documents into SUM Billing’s records and relies upon them in the performance of his business. In generating the verification of treatment forms, Matatov requires the medical providers to submit to SUM Billing all information necessary to complete the forms and sees that any missing information is obtained from the providers. Matatov then enters all the information to be included in the verification of treatment form into a custom-designed software system that creates the completed forms. Matatov averred that after the forms are created, he logs the bills into a mailing ledger, and personally mails the bills to the insurance company. The mailing ledger is stamped by the United States Postal Service. Matatov stated that he “retain[s] sole responsibility for the mailing of the documents created by [SUM Billing], and [he] *503 personally inspect [s] and verifies] the accuracy and completeness of every envelope set to leave the office.” The affidavit also described the eight proof of claim forms that plaintiff submitted with its motion for summary judgment. Matatov affirmed that consistent with the described procedures, he mailed the eight proof of claim forms to defendant.
Defendant opposed the motion, arguing that plaintiff failed to meet its prima facie burden as it did not put forth evidence in admissible form, because all of plaintiff’s exhibits were hearsay with no applicable exception. It asserted that Matatov’s affidavit did not provide sufficient foundation for the admission of the hearsay under the business records exception because the affidavit “merely state [d] the bills were mailed” but gave no other details required to meet the business records exception under CPLR 4518 (a).
Civil Court denied plaintiff’s motion for summary judgment “for failure to establish a prima facie case.” The Appellate Term, for the Second, Eleventh and Thirteenth Districts, affirmed (31 Misc 3d 21 [2011]). Relying on the Second Department’s decision in Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co. (55 AD3d 644 [2d Dept 2008]), the Appellate Term held that Matatov’s affidavit failed to lay a sufficient foundation for the business records hearsay exception. Specifically, the court stated that the “affidavit failed to demonstrate that [Matatov] ha[d] personal knowledge of plaintiff’s practices and procedures and that he [was] competent to testify about those practices and procedures” and alternatively failed to demonstrate that SUM Billing “incorporated plaintiff’s medical records into its own and relied upon them” (31 Misc 3d at 24, 25).
Insofar as relevant here, the Appellate Division, with two Justices dissenting, granted plaintiff’s motion for summary judgment with respect to all the claims that were not timely denied by the insurer (114 AD3d 33 [2013]).[3] The Court declined to follow its decision in Art of Healing Medicine, P.C. v Travelers Home & Mar. Ins. Co. (55 AD3d 644 [2d Dept 2008]), wherein it held that the plaintiffs there “failed to establish their prima facie entitlement to judgment as a matter of law” because “[t]he plaintiffs’ medical service providers failed to demonstrate the admissibility of their billing records under the *504 business records exception to the hearsay rule” (id. at 644). The Court concluded that “Art of Healing constitutes an anomaly, a jurisprudential drift from [the] Court’s well-established precedent” (114 AD3d at 44, 45).[4]
The Court stated:
“We reaffirm the long-standing precedent that, in this context, the plaintiff makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidence, in admissible form, that the prescribed statutory billing forms were mailed to and received by the defendant insurer, which failed to either pay or deny the claim within the prescribed 30-day period” (114 AD3d at 35).
Applying that standard, the Appellate Division determined that, with the exception of the claim that was denied, plaintiff established prima facie entitlement to summary judgment as a matter of law “by demonstrating that its prescribed statutory billing forms used to establish proof of claim were mailed to and received by the defendant and that . . . defendant failed to either timely pay or deny the claims” (id. at 46 [citation omitted]). The Court determined that defendant in opposition failed to raise a triable issue of fact because it was precluded from raising the defense that the proof of claim forms were inadmissible under the business records exception to hearsay as it did not deny the claim within the statutory time frame (id. at 47).[5]
The Appellate Division remitted the case to Civil Court to determine whether plaintiff was entitled to statutory interest and attorney’s fees. Thereafter, the Court granted defendant’s motion for leave to appeal to this Court, certifying the question of whether its determination was properly made.
II
The Comprehensive Motor Vehicle Insurance Reparations Act, commonly referred to as the “No-Fault Law” (see Insurance Law art 51) is aimed at ensuring “prompt compensation for losses incurred by accident victims without regard to fault *505 or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists” (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 860 [2003], citing Governor’s Mem approving L 1973, ch 13, 1973 McKinney’s Session Laws of NY at 2335). This Court has recognized the complicated nature of the statutory and regulatory scheme of the No-Fault Law (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 286 [1997] [describing the scheme as a “ ‘Rube-Goldberg-like maze’ ”]). In Fair Price Med. Supply Corp. v Travelers Indem. Co., we described the no-fault regime as follows:
“ ‘The[ ] regulations require an accident victim to submit a notice of claim to the insurer as soon as practicable and no later than 30 days after an accident (see 11 NYCRR 65-1.1, 65-2.4 [b]). Next, the injured party or the assignee . . . must submit proof of claim for medical treatment no later than 45 days after services are rendered (see 11 NYCRR 65-1.1, 65-2.4 [c]). Upon receipt of one or more of the prescribed verification forms used to establish proof of claim, ... an insurer has 15 business days within which to request “any additional verification required by the insurer to establish proof of claim” (11 NYCRR 65-3.5 [b]). An insurer may also request “the original assignment or authorization to pay benefits form to establish proof of claim” within this time frame (11 NYCRR 65-3.11 [c]). Significantly, an insurance company must pay or deny the claim within 30 calendar days after receipt of the proof of claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). If an insurer seeks additional verification, however, the 30-day window is tolled until it receives the relevant information requested (see 11 NYCRR 65-3.8 [a] [1])’ ” (Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556, 562-563 [2008], quoting Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007]; see Insurance Law § 5106 [a]).[6]
*506 Where an insurer fails to pay or deny a claim within the requisite 30 days under the statute and regulations following its receipt of the proof of claim, the insurer is subject to “substantial consequences,” namely, preclusion “from asserting a defense against payment of the claim” (Fair Price, 10 NY3d at 563 [internal quotation marks omitted]). The only exception to preclusion recognized by this Court arises where an insurer raises lack of coverage as a defense (see id.; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d at 318; Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]). This Court has recognized that preclusion may require an insurer to pay a no-fault claim it might not have had to honor if it had timely denied the claim (see Presbyterian Hosp., 90 NY2d at 285). Nonetheless, we emphasized that the great convenience of “prompt uncontested, first-party insurance benefits” is “part of the price paid to eliminate common-law contested lawsuits” (id.; see Fair Price, 10 NY3d at 565-566).
Prior to Art of Healing and following its abandonment, the Second Department has held that
“[i]n an action to recover no-fault benefits, a plaintiff makes a prima facie showing of entitlement to judgment as a matter of law by submitting evidentiary proof that the prescribed statutory billing forms were mailed to and received by the relevant insurance carrier, and that payment of no-fault benefits was overdue” (Westchester Med. Ctr. v Progressive Cas. Ins. Co., 89 AD3d 1081, 1082 [2d Dept 2011]; see New York Hosp. Med. Ctr. of Queens v QBE Ins. Corp., 114 AD3d 648, 648 [2d Dept 2014]).
Other Appellate Division Departments have adopted the Second Department’s approach and articulated the same standard (see e.g. Sunshine Imaging Assn. / WNY MRI v Government Empls. Ins. Co., 66 AD3d 1419, 1420 [4th Dept 2009]; Countrywide Ins. Co. v 563 Grand Med., P.C., 50 AD3d 313, 314 [1st Dept 2008]; LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co., 30 AD3d 727, 728 [3d Dept 2006]).
We agree with the Appellate Division Departments that a summary judgment motion in a no-fault insurance case where the benefits are overdue requires proof that the statutory claim forms were mailed to and received by the insurer. The legislative design of the no-fault insurance scheme demonstrates an interest in prompt resolution of reimbursement claims, a desire *507 to avoid litigation, and statutory consequences on an insurer to incentivize it to seek verification of a claim, deny it, or pay. As this Court has stated:
“No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits. That is part of the price paid to eliminate common-law contested lawsuits. . . . The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices” (Presbyterian, 90 NY2d at 285 [citation omitted]; see Hospital for Joint Diseases, 9 NY3d at 320).
Consistent with these interests, a medical provider seeking reimbursement from a no-fault insurer demonstrates its entitlement to reimbursement of overdue benefits when it proves that it submitted a completed claim form to the insurer. A claim is overdue if it is not denied or paid within 30 days of the insurer’s receipt of proof of claim (see 11 NYCRR 65-3.8 [a] [1]; Insurance Law § 5106 [a]). Thus, it follows that a claim is not overdue when it is timely denied by the insurer.
The requisite proof in a no-fault insurance case is “proof of the fact and amount of loss sustained” (Insurance Law § 5106 [a]). To establish entitlement to summary judgment on overdue no-fault benefits, the medical provider is required to submit proof of mailing through evidence in admissible form. Such proof may include the verification of treatment form and/or an affidavit from a person or entity (1) with knowledge of the claim and how it was sent to the insurer or (2) who has relied upon the forms in the performance of their business.[7] Thus, even where an insurer is precluded from raising a defense to the proof of claim form because of its failure to timely deny the claim, the plaintiff medical provider must, as an initial matter, demonstrate its entitlement to summary judgment by submission of proof in admissible form.
*508 Admissible evidence may include “affidavits by persons having knowledge of the facts [and] reciting the material facts” (GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965, 967 [1985]; CPLR 3212 [b]; see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Certain affidavits and documents submitted in support of a motion for summary judgment may be deemed admissible where those documents meet the requirements of the business records exception to the rule against hearsay under CPLR 4518 (see e.g. JPMorgan Chase Bank, NA. v Clancy, 117 AD3d 472, 472 [1st Dept 2014]; Education Plus, Inc. v Glasser, 112 AD3d 1125, 1125-1126 [3d Dept 2013]; Melendez v 176 Hopkins Assoc., LP, 28 AD3d 723, 723 [2d Dept 2006]). CPLR 4518 (a) provides:
“Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.”
m.
Applying these principles to the instant facts, the Appellate Division properly determined that plaintiff met its prima facie summary judgment burden. As relevant here, to support its motion, plaintiff submitted the eight verification of treatment forms and Matatov’s affidavit. The documents submitted by plaintiff meet the business records exception to the hearsay rule.
Matatov’s affidavit states that based on his business agreement with plaintiff, SUM Billing created the verification of treatment forms in the regular course of its business and that the forms were created soon after the services were provided by plaintiff to Cardenas. Indeed, the tight timetable of the no-fault scheme requires prompt submission of proof of claim in order to receive reimbursement. Matatov’s affidavit outlines the office practices and procedures used by SUM Billing to mail claim forms to insurers and demonstrates that Matatov himself mails the forms. Matatov explained that SUM Billing relies on these forms in the performance of its business. Further, the affidavit states how and when the forms at issue here were created and that they were mailed to defendant within *509 the statutory time frame. Thus, as plaintiff was able to demonstrate SUM Billing’s office mailing practices and procedures, “a presumption arises that those notices have been received by the insurers]” (Nassau Ins. Co. v Murray, 46 NY2d 828, 829 [1978]). It is undisputed that defendant did not pay or deny seven out of the eight claims at issue. Consequently, those claims are overdue. Plaintiff, therefore, satisfied its burden on summary judgment by demonstrating the mailing of the proof of claim forms, and their receipt by the insurer.
The Appellate Division also properly determined that defendant failed to raise a triable issue of fact in opposition. In fact, defendant concedes that it is precluded from raising any defense due to its failure to timely deny the claims.
Contrary to the dissent’s contention, the risk of an insurer paying out fraudulent claims has been recognized by this Court (see Presbyterian Hosp., 90 NY2d at 285); however, as we have stated that risk is part of the price paid for swift, uncontested resolution of no-fault claims. Where no-fault benefits are not overdue, because of timely denial, the insurer’s compliance with the statute and regulations allows it to retain its right to contest the claims and prevent payment of fraudulent claims. An insurer providing no-fault benefits may not simply sit on its hands until litigation is commenced. Some action is required.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question answered in the affirmative.

. The forms used by the plaintiff are a standard form distributed by the New York State Department of Financial Services.

. Due to an error in calculation, the reimbursement amount sought in plaintiff’s complaint was wrong. The actual total amount billed to the insurer was $6,566.46. Plaintiff moved to amend its complaint to reflect the actual amount of damages.

. All of the courts below denied plaintiff’s motion for summary judgment on one of its claims dated November 17, 2004, in the amount of $139, as it was timely denied by the insurer. The propriety of that determination is not before this Court as plaintiff did not cross-appeal its denial.

. The Court noted that it had relied upon Art of Healing in the context of no-fault insurance in only one case, Matter of Carothers v GEICO Indem. Co. (79 AD3d 864, 864-865 [2d Dept 2010]).

. The dissenting Justices concurred in part and dissented in part, voting to affirm the order of Appellate Term and uphold the decision in Art of Healing.

. Plaintiff commenced this action in September 2005, prior to adoption of the April 1, 2013 amendments to the no-fault insurance regulations, including the additions to 11 NYCRR 65-3.5 and 65-3.8. The amended regulations are not applicable to this case and, therefore, have no bearing on this decision.

. While many of the Appellate Division decisions determining that a medical provider had submitted sufficient proof of mailing and overdue reimbursement do not describe the actual documents submitted to support the motion for summary judgment (see e.g. Westchester Med. Ctr. v Progressive Cas. Ins. Co., 89 AD3d 1081, 1082 [2d Dept 2011]; LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co., 30 AD3d 727, 728 [3d Dept 2006]), it appears that verification of treatment forms and/or affidavits describing the mailing are the types of documents typically considered.